IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREANNA L. SACKETT, | : | CIVIL ACTION NO. **4:CV-07-1848** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Andreanna Sackett, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied her claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), pursuant to Titles II and XVI of the Social Security Act, ("Act").  42 U.S.C. §§ 401-433, 1381-1383f.

**I.    PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for DIB and SSI on March 18, 2005, alleging disability since March 3, 2005, due to back disorders.  (R. 12, 35, 71, 315).  The state agency denied her claim initially and she filed a timely request for a hearing.  (R. 37-47).  A hearing was held before an Administrative Law Judge, ("ALJ"), on February 13, 2007.  (R. 329-52).  At the hearing, the Plaintiff, represented by counsel, and a vocational expert, ("VE"), testified.  (R. 329-52).  The Plaintiff was denied benefits pursuant to the ALJ's decision of March 15, 2007.  (R. 9-16).

The Plaintiff requested review of the ALJ's decision.  (R. 7-8).  The Appeals Council denied her request on September 15, 2007, making the ALJ's decision the final decision of the Commissioner.  (R. 4-6).  42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 11 & 12).

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in

the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through the sequential evaluation process and concluded, at step four, that the Plaintiff was not disabled within the meaning of the Act.  (R. 12-16).  At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date, March 3, 2005.  (R. 14).  At step two, the ALJ concluded that the Plaintiff's chronic low back pain secondary to a bulging disc at L5-S1 and obesity were "severe" impairments within the meaning of the Regulations.  (R. 14-15).  At step three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 15-16).

At step four, the ALJ found that the Plaintiff is capable of performing her past relevant work as a secretary.  (R. 16).  Therefore, the ALJ determined that the Plaintiff has not been under a disability, as defined in the Act, from March 3, 2005, her alleged disability onset date, through the date of the hearing decision.  (R. 16).

## IV.     BACKGROUND.

The Plaintiff was born on August 14, 1978 and was twenty-eight (28) years old at the ALJ hearing.  (R. 333, 340).  She is considered a "younger person" under the Regulations.  (R. 20).  20 C.F.R. §§ 404.1563(c), 416.963(c).

The Plaintiff graduated high school and attended, but did not complete, college.  She earned an Associate's Degree.  (R. 333-34).  The Plaintiff worked as an aide in a group home for developmentally disabled individuals.  On September 7, 2002, the Plaintiff was attacked by a patient at work, causing a ruptured disc in her back.  (R. 137-43, 342).  On the day of

the incident, the Plaintiff went to the emergency room and was diagnosed with acute back strain and was advised to stay out of work for two days.  (R. 143).  The Plaintiff receives workers' compensation.  (R. 334).

The Plaintiff suffers from pain in her lower back that radiates down her buttocks and the back of her legs.  (R. 346).  The Plaintiff has difficulty sitting and can sit for ten to ninety minutes at a time, depending on the type of chair.  (R. 335-36).  The Plaintiff has difficulty walking on some days, but not everyday.  (R. 336).  She can stand for ten to fifteen minutes at a time, but if she moves around she can stand longer.  (R. 336).  The Plaintiff takes medications to treat her symptoms.  (R. 336).  The medications cause drowsiness and constipation.  (R. 346).

During the day, the Plaintiff watches television, sews, does a little housework, does laundry (with help), goes to doctor's appointments, runs errands and grocery shops.  (R. 337, 344).  The Plaintiff has difficulty sleeping due to discomfort and wakes up three to four times per night.  (R. 343-44).  The Plaintiff has no trouble driving short distances, but has some trouble driving longer distances.  (R. 337).  The Plaintiff occasionally walks for exercise.  (R. 337).  The Plaintiff stated that she does not believe her condition is getting any worse, however she does not believe that it is getting any better.  (R. 337).

The vocational expert testified based on the *Dictionary of Occupational Titles*.  (R. 348-51).  The ALJ asked the vocational expert to hypothetically consider an individual with the Plaintiff's same age, education, past work experience and medical history with the ability to occasionally lift and carry less than ten pounds, frequently lift and carry two to three pounds, would require a primarily seated job with a sit/stand option, with standing and walking for ten to fifteen minutes at a time and two to three hours cumulatively.  (R. 349).  The vocational expert stated that such an individual would be able to perform the Plaintiff's past relevant work as a secretary.  (R. 349-50).

The ALJ next asked the vocational expert to hypothetically consider an individual with the limitations as testified to by the Plaintiff and with objective evidence to support her testimony.  (R. 350).  The vocational expert stated that such an individual would not be able

4

to perform the Plaintiff's past relevant work or any other work.  (R. 350).

## V.     DISCUSSION.

The Plaintiff argues that the ALJ erred by failing to accord significant weight to the opinion of her treating source, Tahirul Hoda, M.D., and by failing to consider the Plaintiff's subjective complaints of pain.  (Doc. 11 at 11).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The Plaintiff argues that the ALJ did not offer any evidence contrary to Dr. Hoda's findings.  (Doc. 11 at 12).  However, the ALJ evaluated the various medical opinions as well as the objective medical evidence of record.  (R. 14-15, 354).

In his decision, the ALJ noted that Dr. Hoda treated the Plaintiff for back pain and assessed her as having a herniated disc at L5-S1 with radicular symptoms.  (R. 15).  Dr. Hoda referred the Plaintiff to a pain clinic and noted that she received epidural injections.  (R. 15).

5

Throughout his treatment of the Plaintiff Dr. Hoda noted that she had chronic back pain and was obese.  (R. 15).

The Plaintiff began treating with Dr. Hoda in 1996.  (R. 188-223, 263, 285-300).  In September 2002, Dr. Hoda noted that the Plaintiff suffered from low back pain/muscle strain and radicular symptoms.  (R. 196-97).

The Plaintiff underwent an MRI of the lumbar spine on September 21, 2002 which revealed a diffuse posterior disc bulge at L5-S1 and a broad-based central and left-sided herniated nucleus pulposus, ("HNP"), impressing on the left S1 nerve root as it exits the thecal sac.  (R. 259).

On October 15, 2002, Dr. Hoda noted that the Plaintiff recently underwent an MRI which revealed L5-S1 diffuse disc bulging and a broad-based, central and left sided HNP, pressing on the left S1 nerve root as it exits the thecal sac.  (R. 194).  He stated that the Plaintiff suffered from herniated L5-S1 disc with radicular symptoms.  (R. 194-95).

In January 2003, the Plaintiff underwent a neurosurgical evaluation with Saeed A. Bajwa, M.D.  (R. 162-64).  Upon examination, the Plaintiff's alignment and curvature of the spine were normal, she had moderate paraspinal muscle spasms and tenderness over the left lower lumbosacral region, restricted range of motion of the lumbosacral spine, a positive straight leg raising test on the left but negative on the right, and negative Femoral stretch and Patrick's signs.  (R. 163).  Dr. Bajwa recommended medications and chiropractic treatment.  (R. 164).

On March 27, 2003, the Plaintiff underwent a CT scan of the lumbar spine which revealed no significant disc degeneration, an incomplete irregular left posterior paramedian radial annual tear without extending through the posterior annular complex, mild posterior disc bulge, no evidence of focal disc protrusion, herniation or S1 neural compression in supine position and no spinal stenosis.  (R. 158).

On April 1, 2003, the Plaintiff reported significant improvement with medication and that she was working on a temporary basis.  (R. 152).

On May 29, 2003, Dr. Bajwa performed a CT guided IDET. (R. 144-46). Dr. Bajwa noted that the Plaintiff's MRI revealed only a bulging disc and not a herniated disc. (R. 144). Dr. Bajwa's postoperative diagnosis was a bulging disc at L5-S1 on the left side, causing a left S1 radiculopathy and obesity. (R. 144).

The Plaintiff underwent an evaluation with neurosurgeon Webster H. Pilcher, M.D., Ph.D., on September 12, 2003. (R. 165-66). Dr. Pilcher noted that the Plaintiff presented with disabling musculoskeletal back pain. (R. 166). He recommended that the Plaintiff lose weight, swim regularly and remain physically active. (R. 166).

In January 2004, the Plaintiff treated with chiropractor Donna H. Rodriguez, D.C. (R. 167-71). Dr. Rodriguez found that the Plaintiff could lift and carry thirty pounds, stand and/or walk up to six hours per day, had no limitations with sitting, was limited in pushing and pulling with her left foot and must avoid temperature extremes. (R. 170).

On February 14, 2005, Dr. Hoda noted that the Plaintiff suffered from disabling musculoskeletal back pain following a work injury and is status post discogram and IDET procedure. (R. 190). Dr. Hoda advised that the Plaintiff take medications and return for a follow-up visit. (R. 190).

On February 17, 2004, the Plaintiff underwent an orthopaedic examination with John Cusick, M.D. (R. 172-76). The Plaintiff reported that she cooks, cleans, does laundry, shops, showers and dresses without help, watches television, listens to the radio, reads and socializes with friends. (R. 173). The Plaintiff's gait was slightly antalgic, favoring the left leg, she was able to heel and toe walk without difficulty, she could squat only 60% of the full distance due to back and hip pain, she uses no assistive device and was able to get on and off the examination table without help. (R. 173).

Dr. Cusick's diagnostic impression was disc disease of the low back and obesity. (R. 175). He opined that the Plaintiff's prognosis for the disc disease was good and that there was a significant possibility of future improvement. (R. 175). Dr. Cusick then stated that, based on the objective findings, "the claimant is amplifying her symptoms to a significant degree." (R. 175). He found that the Plaintiff was moderately limited in bending, lifting and

7

climbing stairs.  (R. 175).

On March 7, 2005, Dr. Hoda noted that the Plaintiff had chronic low back pain with radicular symptoms, status post IDET and recent aggravation of pain.  (R. 188).  Dr. Hoda gave the Plaintiff medication and recommended that she attend a pain clinic.  (R. 188).

The Plaintiff underwent another MRI of the lumbar spine on April 4, 2005.  (R. 226).  The MRI revealed L5-S1 left paramedian disc herniation (more focal than the September 21, 2005 study) impressing on the left S1 nerve root as it exits the thecal sac, retrolisthesis, discogenic disease, L4-L5 disc bulges and facet and ligamentous hypertrophy at L3-L4 and L4-L5.  (R. 226).

On June 3, 2005, the Plaintiff returned to see Dr. Hoda.  (R. 298).  Dr. Hoda's assessment was chronic low back pain with bilateral lower extremity radicular pain, status post IDET and history of HNP of L5-S1.  (R 298).  Dr. Hoda also noted that the Plaintiff continued to suffer from chronic low back pain, she treated at a pain clinic and was receiving epidural injections.  (R. 298).

In November 2005, the Plaintiff reported to Dr. Hoda that she continued to suffer from low back pain.  (R. 295).  Dr. Hoda stated that the Plaintiff "is still unable to return to work or do anything because of her continued back pain." (R. 295).  Dr. Hoda recommended that the Plaintiff undergo a work capacity evaluation.  (R. 295).

In February 2006, Dr. Hoda's impression was chronic low back pain with bilateral lower extremity radicular symptoms, HNP at L5-S1, bulging disc at L5 and facet arthropathy with chronic pain syndrome.  (R. 294).

On April 26, 2006, the Plaintiff reported low back pain that radiated to her lower extremities.  (R. 293).  Dr. Hoda stated that the Plaintiff "is unable to return to school at this time until her pain gets better."  (R. 293).

In June 2006, Dr. Hoda stated that the Plaintiff's back and joint pain, HNP and disc bulges were worsened by morbid obesity.  (R. 291).  He encouraged weight loss.  (R. 291).  Dr. Hoda stated that he filled out a disability form for the Plaintiff finding that she was permanently disabled due to her chronic back problems.  (R. 290).

On July 12, 2006, the Plaintiff complained to Dr. Hoda of bilateral knee pain.  (R. 283).  Dr. Hoda's only recommended treatment was severe weight loss and aggressive quad strengthening.  (R. 284).  The Plaintiff stated that she had a gym membership and would begin working out.  (R. 284).

In December 2006, the Plaintiff reported increasing back pain and requested medication renewals.  (R. 286).  Dr. Hoda discussed medication dependency with the Plaintiff but stated that she needed to take the medication until the pain clinic took over.  (R. 286).  Also in December 2006 the Plaintiff reported to Dr. Hoda that she was unable to complete the work capacity evaluation due to her back pain.  (R. 285).

On July 3, 2004, the Plaintiff presented to the emergency room with complaints of low back pain and was treated by Timothy M. Bennett, M.D.  (R. 177-78).  Upon examination, the Plaintiff had a positive straight leg raising test and positive pulses of the lower extremities.  (R. 177).  The Plaintiff's spine was tender in the lumbosacral region in the paravertebral musculature with some spasm, and no sacroiliac joint or sciatic notch tenderness.  (R. 178).

The Plaintiff underwent a pain consultation with Robert L. Madden, M.D., on March 10, 2005.  (R. 227-31, 264).  The Plaintiff reported pain in her low back that radiates down her legs.  (R. 227).  She also reported that she was a full time medical technology student in college and she was working part-time.  (R. 228).  Upon examination, the Plaintiff had increased lumbar lordosis with fairly straight vertebral alignment, severe tenderness of the lumbar alignment, no spasms, a positive straight leg raising test on the left, but negative on the right, negative Patrick's maneuver and negative pelvic compression tests.  (R. 229).

As indicated above, Dr. Bajwa treated the Plaintiff on several occasions and performed an IDET procedure and diagnosed a bulging disc at L5-S1 on the left side, causing a left S1 radiculopathy and obesity.  (R. 144-64).  On July 1, 2003, Dr. Bajwa wrote a letter to Dr. Hoda regarding his evaluation of the Plaintiff on June 30, 2003.  (R. 147).  Dr. Bajwa reported that the Plaintiff was in mild distress, she had a minimally positive straight leg raising test at 90 degrees on the left and negative on the right, and no focal motor deficits.

(R. 147).

The Plaintiff underwent a Physical RFC Assessment with Dr. Wander on May 24, 2005. (R. 232-39). Dr. Wander found that the Plaintiff could perform light duty work. (R. 233). The ALJ did not fully accept Dr. Wander's opinion, finding that it was inconsistent with the other evidence of record. (R. 354).

The Plaintiff underwent an independent neurosurgical evaluation with Dr. Storrs on January 10, 2006. (R. 275-79). Dr. Storrs stated that the Plaintiff's pain did not appear to be "true radicular pain." (R. 277). He also reviewed the Plaintiff's April 2005 MRI and found that it showed evidence of disc bulge, not disc herniation. (R. 275, 277). Dr. Storrs determined that the Plaintiff could perform light or sedentary work with not a lot of standing, walking, lifting, bending, crawling, stooping or carrying and would not require lifting more than fifteen pounds. (R. 16, 354). The ALJ relied on Dr. Storrs' opinion in part, however the ALJ's determination was more limited. The ALJ found that the Plaintiff retained the RFC for sedentary work with occasionally lifting and/or carrying ten pounds, standing and/or walking for ten to fifteen minutes at a time and for two to three hours over the course of an eight-hour workday, with a sit/stand option. (R. 353).

The ALJ also considered the objective medical evidence of record. (R. 14-15). The ALJ noted that the Plaintiff underwent an MRI in April 2005. (R. 15).

The ALJ found that the Plaintiff's chronic low back pain was a severe impairment. (R. 14). However, the ALJ then found that the Plaintiff's spinal impairment failed to meet the requirements of Listing 1.04A (Disorders of the spine) because there was no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. (R. 15, 353). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A.

The record reflects that the Plaintiff suffers from back impairments, however the evidence also reveals that the Plaintiff was active and was advised by her doctors to exercise and remain active. Further, in July 2006 Dr. Hoda's only recommended treatment for the Plaintiff was "severe weight loss" and exercise. (R. 284). Substantial evidence supports the

ALJ's evaluation of the evidence of record and his finding that the Plaintiff was not totally disabled as defined in the Act.

The Plaintiff next argues that the ALJ erred by finding that her subjective complaints were not entirely credible. (Doc. 11 at 13-15).

With respect to subjective complaints, the regulations require objective clinical signs and laboratory findings which demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the regulations then require the ALJ to evaluate their intensity and persistence and their effect on the claimant's capacity to work in light of the entire record. 20 C.F.R. §§ 404.1529(c)(1)-(3). The Third Circuit has indicated that "[t]his obviously requires the administrative law judge to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Where the ALJ's credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but not to the intensity, persistence and limiting effects alleged by the Plaintiff. (R. 354). The ALJ considered all of the Plaintiff's impairments and concluded that she is capable of performing her past relevant work as a secretary. (R. 14-16). The ALJ noted that some of the Plaintiff's past relevant work required more than sedentary exertion, however the ALJ found that the Plaintiff can only perform her past sedentary work as a secretary. (R. 16).

The Plaintiff states that the ALJ's only reasons for discrediting the Plaintiff's subjective complaints are that she shopped for groceries and attempted to return to college. (Doc. 11 at 13-14); (R. 354). The Plaintiff also notes that in April 2006 Dr. Hoda stated that the Plaintiff was unable to return to school until her pain got better. (Doc. 11 at 14); (R. 293).

However, the ALJ noted that the Plaintiff was able to grocery shop, she attempted to return to college, her symptoms were inconsistent with the opinions of Drs. Wander and Storrs and the other examining physicians, and her symptoms were not supported by the objective evidence of record. (R. 354).

At the ALJ hearing, the Plaintiff testified that she grocery shops and runs errands during the day. (R. 337, 344). The Plaintiff also testified that she does some housework and laundry, runs errands, grocery shops and walks for exercise. (R. 337, 344).

On her June 2005 Disability Questionnaire, the Plaintiff indicated that she is able to cook easy meals, she vacuums with breaks, she performs household chores at her own pace, does laundry (but is unable to carry the laundry basket) and takes care of her own personal needs. (R. 121-29). The Plaintiff also reported that she has to rest between activities, she can no longer do dishes or perform any activities where she has to stand, lift, carry or bend. (R. 123). She indicated that she can climb stairs two to three times per day, she can walk fifty to one hundred yards without stopping, she can sit for fifteen minutes at a time and she can lift and carry ten pounds. (R. 123). She is able to start and complete projects and activities, plan her days, make her own decisions and she has no problems with instructions. (R. 125-26). Thus, the Plaintiff has indicated that, although limited to a certain extent, she is capable of performing certain daily activities, which is inconsistent with the definition of total disability pursuant to the Act.

The defendant states that the ALJ found that the Plaintiff's subjective complaints were not entirely credible because they were inconsistent with the opinions of Drs. Wander and Storrs, they were not supported by the objective evidence as interpreted by neurosurgery specialists, and they were not supported by the Plaintiff's activities. (Doc. 12 at 21). Moreover, Dr. Cusick specifically found that the Plaintiff was amplifying her symptoms to a significant degree. (R. 175).

While the record reflects that the Plaintiff suffers from limitations as a result of her impairments, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff's subjective complaints were not entirely credible to the extent that they were not

totally disabling as defined in the Act, and that she remains capable of performing her past relevant work as a secretary.

**VI.     RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED**.

                                        s/ Thomas M. Blewitt
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: August 26 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREANNA L. SACKETT, | : | CIVIL ACTION NO. **4:CV-07-1848** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 26, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated:  August 26 2008**